**Docket No. 2023-1076**

*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

———————————————————•—•———————————————————

In re:  EXPRESS MOBILE, INC.,

*Appellant.*

———————————————————————————————

*Appeal from the United States Patent and Trademark Office*
*in Case No. 90/014,615  ·  Michael James Engle, Administrative Patent Judge*
*Daniel J. Galligan, Administrative Patent Judge  ·  Allen R. MacDonald, Administrative Patent Judge.*

## REPLY BRIEF FOR APPELLANT EXPRESS MOBILE, INC.

ROBERT F. KRAMER, ESQ.
DAVID ALBERTI, ESQ.
SAL LIM, ESQ.
JAMES P. BARABAS, ESQ.
KRAMER ALBERTI LIM & TONKOVICH LLP
577 Airport Boulevard, Suite 250
Burlingame, California 94010
Telephone: 650 825-4300
rkramer@krameralberti.com
dalberti@krameralberti.com
slim@krameralberti.com
jbarabas@krameralberti.com

KENNETH J. WEATHERWAX, ESQ.
LOWENSTEIN & WEATHERWAX LLP
1016 Pico Boulevard
Santa Monica, California 90405
Telephone: 310 307-4500
weatherwax@lowensteinweatherwax.com

*Attorneys for Appellant Express Mobile, Inc.*



# CERTIFICATE OF INTEREST

Pursuant to Fed. Cir. Rule 47.4, counsel for the Appellant Express Mobile, Inc. certifies the following:

1.      **Represented Entities**. The full name of all entities represented by me is: Express Mobile, Inc.

2.      **Real Party in Interest**. The full name of the real party in interest for the entities is: None.

3.      **Parent Corporations and Stockholders**. The full names of all parent corporations for the entity and any publicly held companies that own 10 percent or more stock in the entities represented by me are: None.

4.      **Legal Representatives**. All law firms, partners, and associates that (a) appeared for the entity in the originating agency, or (b) are expected to appear in this court for the entity are: Bridget A. Smith, Lowenstein & Weatherwax LLP (no longer with firm).

5.      **Related Cases**. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

*Express Mobile, Inc. v. Facebook, Inc.*, No. 23-1645 (Fed. Cir.);
*Express Mobile, Inc. v. Facebook, Inc.*, IPR2020-01224 (PTAB);
*Express Mobile, Inc. v. Google LLC*, No. 3:21-cv-08944 (N.D. Cal.);
*Express Mobile, Inc. v. Meta Platforms, Inc.*, No. 3:21-cv-06657 (N.D. Cal.);
*Express Mobile, Inc. v. Atlassian Corp. PLC*, No. 3:21-cv-08942 (N.D. Cal.);
*Express Mobile, Inc. v. eBay Inc.*, No. 3:21-cv-06656 (N.D. Cal.);
*Express Mobile, Inc. v. Salesforce.com, Inc.*, No. 3-20-cv-08461 (N.D. Cal.);
*Express Mobile, Inc. v. SAP SE*, No. 3-20-cv-08492 (N.D. Cal.);
*Express Mobile, Inc. v. Oath Holdings Inc.*, No. 3-20-cv-08321 (N.D. Cal.);
*Shopify Inc. v. Express Mobile, Inc.*, No. 1-19-cv-00439 (D. Del.);

*Express Mobile, Inc. v. GoDaddy.Com, LLC*, No. 1-19-cv-01937 (D. Del.);
*Express Mobile, Inc. v. HubSpot, Inc.*, No. 1-20-cv-01162 (D. Del.);
*Express Mobile, Inc. v. Squarespace, Inc.*, No. 1-20-cv-01163 (D. Del.);
*X.Commerce, Inc. d/b/a Magento, Inc. v. Express Mobile, Inc.*, No. 3-17-cv-02605 (N.D. Cal.);
*Express Mobile, Inc. v. Wix.com, Ltd.*, No. 3-19-cv-06559 (N.D. Cal.);
*Express Mobile, Inc. v. Microsoft Corp.*, No. 3-20-cv-06152 (N.D. Cal.);
*Express Mobile, Inc. v. Adobe Inc.*, No. 3-20-cv-08297 (N.D. Cal.);
*Express Mobile, Inc. v. Pinterest, Inc.*, No. 3-20-cv-08335 (N.D. Cal.);
*Express Mobile, Inc. v. Amazon.com, Inc.*, No. 3-20-cv-08339 (N.D. Cal.);
*Express Mobile, Inc. v. Slack Technologies, Inc.*, No. 3-21-cv-02001 (N.D. Cal.);
*Express Mobile, Inc. v. Web.com Group, Inc.*, No. 3-20-cv-00839 (M.D. Fla.);
*Express Mobile, Inc. v. Expedia, Inc.*, No. 1-21-cv-01141 (W.D. Tex.);
*Express Mobile, Inc. v. Dropbox, Inc.*, No. 3:21-01145 (N.D. Cal.).

6.    Information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal case and debtors and trustees in bankruptcy cases: None/Not applicable.

Dated: June 22, 2023             Respectfully submitted,

/s/ *Robert F. Kramer*
Robert F. Kramer
David Alberti
Sal Lim
James P. Barabas
**KRAMER ALBERTI LIM**
**& TONKOVICH LLP**
577 Airport Blvd., Suite 250
Burlingame, CA 94010
Telephone: (650) 825-4300

Kenneth J. Weatherwax
**LOWENSTEIN & WEATHERWAX**
1016 Pico Blvd.
Santa Monica, CA 90405
Telephone: (310) 307-4500

*Counsel for Appellant Express Mobile, Inc.*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES .................................................................. v

INTRODUCTION ............................................................................... 1

I.      ARGUMENT ............................................................................ 3

     A.    The Board erred in affirming the rejection in reliance on an erroneous, previously unstated new claim construction. ........................................................ 3

          1.    The Parties squarely dispute whether the Board's analysis in fact applied its stated claim construction............................................. 4

          2.    The Board's finding that VDM '316 teaches generating a display "substantially contemporaneously" with a user's selection of settings is unsupported ................................. 4

     B.    The Director's attempts to recharacterize or cure the Board's erroneous determinations are unsuccessful. ................................................................ 5

          1.    The Board's finding that VDM '316 updates the display to reflect a user selection before the user selects the accept button is unsupported by the record ............................... 5

               a.    The inventors' WYSIWYG concepts are captured in the "substantially contemporaneously" language ............................. 6

               b.    The Board erred in finding that Express Mobile's assertions about the accept button contradict VDM '316 ........................ 13

2.  The Board erred in finding that VDM '316 updates the display to reflect a user selection "at the same time" the user selects a setting...................18

3.  The Board erred in finding that VDM '316 does not use the word "eventually" to indicate an indeterminate delay before updating the display.......................................................21

4.  The Board erred in finding that the '397 patent's polling architecture is not faster or better than VDM '316's processing methodology ...............................................................30

5.  The Board erred in finding that VDM '316 teaches generating display "substantially contemporaneously" with user selection of privacy settings ...............................................................31

CONCLUSION....................................................................................32

CERTIFICATE OF COMPLIANCE.......................................................34

CERTIFICATE OF SERVICE .............................................................35

# TABLE OF AUTHORITIES

**Cases**

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
  881 F.3d 1354 (Fed. Cir. 2018) ............................................................12

*In re Abbott Diabetes Care Inc.*,
  696 F.3d 1142 (Fed. Cir. 2012) ..............................................................3

*Raytheon Techs. Corp. v. Gen. Elec. Co.*,
  993 F.3d 1374 (Fed. Cir. 2021) .................................................... 20, 26

*Univ. of Strathclyde v. Clear-Vu Lighting LLC*,
  17 F.4th 155 (Fed. Cir. 2021) ..............................................................32

## **INTRODUCTION**

The Board made an error of law in the decision below. The parties agree that the Board announced a construction of "substantially contemporaneously," and that it was required to apply it. The parties dispute whether the Board applied that construction, as it was required to do, or instead applied an alternative construction neither announced nor supported. The record clearly shows that the Board relied on an alternative, incorrect claim construction (of merely happening at some point afterwards, even after additional user interaction such as clicking an accept button), instead of applying the adopted construction, consistent with the evidence, of "happening at the same period of time from a human perspective." This error requires reversal. The Director's attempt to recharacterize this error as mere fact-finding rewrites the record. And, even under that alternative construction, the decision's analysis fails to find any support in the record, and the Director's attempts to salvage the Board's findings on appeal are utterly unconvincing.

The abstract of the '397 patent discloses that it allows the presentation of "a WYSIWYG representation of the web page," or "what you see is what you get." Appx76. The term "WYSIWYG" does not appear in the claims, nor does it need to. The inventors' hard-won achievement—immediate display from the user's perspective of changes to the webpage shown on the webpage as he selects them—

is clearly captured in the "substantially contemporaneously" limitation's claim language.

The background of the '397 patent explains that "[c]onventional web site construction tools operate on traditional operating system platforms and generate as output *HTML (hyper text mark-up language)* and Script Code (e.g., JavaScript)." Appx145, 1:11-14 (emphasis added). These conventional mark-up and scripting languages, like those used in VDM '316, include "numerous inherent limitations." *Id.* at 1:16. In particular, "they [we]re remarkably slow and inefficient." *Id.* at 1:21. Accordingly, "it is virtually impossible to write a web publishing application in HTML and JavaScript." *Id.* at 1:22-23.

The VDM '316 prior art, which is no more than the prior art the patent expressly distinguished and improved, merely provides "a way for users to keep track of locations that they have visited in a more visual and memorable way" and has no teachings of such substantially contemporaneous webpage editing display. Appx451, 1:65-67. The flowchart in VDM '316 that the Board refers repeatedly to – Figure 4(l) – provides in its last bullet that "[*f*]*inally*, a new (updated) page is generated and displayed." Appx439. VDM '316's description of its "Modifying Content Entries," the focus of the parties' arguments, is entirely consistent with Figure 4(l)'s "*Finally*" teaching: it does not even suggest WYSIWYG-type disclosure and here describes how "applet 112 will *eventually regenerate* the diary

2

page to look like the diary page in Figure 4(m)." Appx457, 13:24-25 (emphasis added). Having a web page that is "finally" or "eventually" regenerated is exactly what would be expected from late 1990's prior art – conventional web site construction tools generating HTML output not contemporaneously but "finally," "eventually," well after they are selected.

The decision below must be reviewed on the grounds relied upon by the Board. Those grounds are legally erroneous. The decision should be reversed.

## I. ARGUMENT

### A. The Board erred in affirming the rejection in reliance on an erroneous, previously unstated new claim construction.

The Board erred in affirming the Examiner's rejection of claim 1 as obvious over the combination of VDM '316 and VDM '362. Appx37. The limitation at issue is that in step (b), which recites "generating a display in accordance with one or more user selected settings *substantially contemporaneously* with the selection thereof." Appx3332. The Director characterizes this as "a challenge to the Board's findings," Resp. Br. 29, but the Board's Decision clearly was not applying the agreed upon claim construction of "happening at the same period of time from a human perspective," but a modified, broader construction instead. *See In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1148, 1150-51 (Fed. Cir. 2012) (vacating Board's decision and remanding for application of "original construction" where the Board first

correctly construed a disputed term, but then actually applied an incorrect "modified construction" in its analysis).

### 1.    The Parties squarely dispute whether the Board's analysis in fact applied its stated claim construction.

No party challenges the Board's *stated* construction of "substantially contemporaneously" as "happening at the same period of time from a human perspective." Appx8-9; Resp. Br. 29. The question is whether the Board's "finding" that VDM '316 teaches a method and apparatus that generates a display in accordance with a user's selection of a setting "substantially contemporaneously" with the user's selection, as recited by claim 1 of the '397 patent, applied the agreed-upon construction of "substantially contemporaneously." In fact, it did not.

### 2.    The Board's finding that VDM '316 teaches generating a display "substantially contemporaneously" with a user's selection of settings is unsupported

The Board's finding that limitation (b)'s "substantially contemporaneous" requirement is disclosed in VDM '316 cannot be reconciled with its construction of that language. Appx19-30.

The Board erred in finding that VDM '316 teaches regenerating a display as soon as an edit is made. Appx20-22. The Board references the move object example described in VDM '316 with reference to Figures 4(i)–4(n), relying on an unsupported finding that VDM '316 teaches that the diary applet acts "immediately" on user edits by regenerating the HTML code and sending the updates to the browser

4

for display. Appx25-28. However, VDM '316 Figure 4(l) explicitly states, "[f]inally, a new (updated) page is generated and displayed." Appx439. The language used in Figure 4(l) "Finally" and in the specification ("applet 112 will eventually regenerate the diary page") is not consistent with the agreed-upon construction of "substantially contemporaneously" that the Board purported to apply. Appx439; Appx457, 13:24-25.

The Board relies on a finding that VDM '316 teaches an alternative embodiment implementing the diary applet's functionality directly in the browser. Appx24. However, no such embodiment is taught. As discussed below, VDM '316 merely states in its last substantive paragraph before the claims that "[t]he functionality of the diary applet 112 could also be implemented in the browser," without even a vague description of how, and with no teaching of this meeting the "substantially contemporaneously" limitation. Appx459, 18:52-53.

## B. The Director's attempts to recharacterize or cure the Board's erroneous determinations are unsuccessful.

### 1. The Board's finding that VDM '316 updates the display to reflect a user selection before the user selects the accept button is unsupported by the record

As the '397 patent states, at the time of the invention "HTML and JavaScript [we]re incapable of reformatting text and scaling buttons or images dynamically." Appx145, 1:40-41. A WYSIWYG-type display, or a display that occurs "substantially contemporaneously," differs in its capabilities from such HTML. *See*

*id.* VDM '316 is simply that prior art: its display is static when selections are made and if the accept button is never clicked, the user will never see the effects of the selection at all. Appx1736, Appx1744, Appx1747, Appx1749, Appx1752 (Weadock Decl. ¶¶ 109, 132, 140, 147, 159). The Board erred in finding otherwise.

### a. The inventors' WYSIWYG concepts are captured in the "substantially contemporaneously" language

The term "WYSIWYG" does not appear in claim 1 of the '397 patent, but it did not need to: the term that captures this aspect of the invention is "substantially contemporaneously." Appx177 (claim 1). The concept is in fact captured in the Board's expressed construction of "substantially contemporaneously": happening at the same period of time from a human perspective. Appx9.

The '397 patent describes this concept in detail. For example:

> *A polling loop is defined* in the panel's (panel 400**)** JavaScript *that creates a near continuous, at least from a human perception point of view, dynamic real time link*, in order to monitor events occurring inside the build engine. *The result is a real time retrieval (from an ergonomic perception point of view)* of necessary data and status settings from the build engine back to the interface.

Appx156, 23:20-27 (emphasis added). This is the concept captured in "substantially contemporaneously." Appx1811-1812 (*Svanaco* Claim Construction Order).

The Director argues that "[c]ommon sense dictates that WYSIWYG does not mean that the display is magically updated without any background processes". Resp. Br. 32. Express Mobile never made any such argument. The point has always been that the '397 patent expressly discloses "real time retrieval (from an ergonomic

6

perception point of view),” and “a near continuous, at least from a human perception point of view, dynamic real time link,” established through “a polling loop” defined in the panel’s JavaScript. Appx156, 23:21-30.

Moreover, the patent discloses in careful detail the processes enabling this key element of the invention. The ’397 patent provides that “[t]o enable effective two-way communication between the interface and the build engine, polling technology is included as shown at 16.” Appx147, 6:38-40. The ’397 patent explains “[t]he details of the polling process . . . in greater detail . . . in association with FIG. 9.” *Id*. at 6:40-43. Fig. 9 is reproduced below:



*Fig. 9*          **POLLING METHODS**

Appx89. As Figure 9 explains, "JAVASCRIPT POLLS THE JAVA BUILD ENGINE EVERY 100 (OR LESS) MILLISECONDS." The Director and Board disregard this detailed description enabling "a display" to be generated "substantially contemporaneously," as set forth in claim 1. And the description of polling occurring every 100 (or less) milliseconds is consistent with the claim construction of "substantially contemporaneously" that the Board failed to apply.

VDM '316 discloses nothing like this. VDM '316 is directed to "[a] method and apparatus to create a 'diary' of multimedia references." Appx427, Abstract. Neither in its flowchart of Figure 4(l), directed to "HTML Control (Editing content)," nor anywhere else does it even suggest any real time polling or other substantially contemporaneous display. Appx439. Instead, it describes how, after various steps, "[f]inally, a new (updated) page is displayed":

Flowchart

The above operations are implemented through control by means of dynamic HTML generation. A flowchart is given below in figure 11.

- By setting the W3Diary in edit mode, the HTML generator re-generates the page and adds object control handles (in this case of type "edit") to the page
- The user clicks on a control handle. The handle identification is passed on to the HTML generation engine (by JavaScript in the current embodiment)
- Any appropriate action is executed on the object identified by the handle and represented in HTML
- Finally, a new (updated) page is generated and displayed.



HTML Control (Editing content)

**Figure 4(I)**

*Id.*

The Director argues on appeal that "the basic programming architectures of the '397 patent and VDM '316 share some similarities". Resp. Br. 32. No one disputes this. The point is that "some similarities" (*id.*) clearly leave critical differences—in particular the polling methodology allowing for display to occur "substantially contemporaneously."

Both the '397 patent and VDM '316 allow for changes to webpages to be displayed. The focus of this appeal is whether VDM '316 merely discloses them in a way letting users "keep track of locations that they have visited in a more visible and memorable way," (Appx451, 1:65-67), or whether VDM '316 generates a display "substantially contemporaneously," as that term has been construed, on the webpage being changed. The Director argues that "any distinctions in the build architectures of the '397 patent and VDM '316 are not directly relevant to the obviousness of claim 1". Resp. Br. 33. However, they are highly relevant because the Board has identified no evidence that the build architecture of VDM '316 can generate a display "substantially contemporaneously" in a browser.

The Board rejected Mr. Weadock's expert testimony concerning "the actual amount of time it would take to regenerate an HTML file and send that file to a browser," and "how that time compares to the '397 patent's up to 100 milliseconds for polling followed by its own processing time." Resp. Br. 33 (citing Appx25). However, the evidence of VDM '316 is consistent with Mr. Weadock's analysis, not

the Board's. The background of the invention of VDM '316 describes "drawbacks" of the Internet, such as "its speed (or lack thereof)," that "are readily apparent to the casual user," and the Internet's "volatility," in which a user "has nothing tangible by which to remember where he has gone," and is directed to the need of allowing "users to keep track of locations that they have visited in a more visual and memorable way." Appx451, 1:28-29, 48, 63-67. There is no disclosure in VDM '316 that its system would—or even could—swiftly generate a display in response to a setting selection. VDM '316's lack of disclosure regarding the speed of display and its lack of need for display "substantially contemporaneously" make sense, because, for example, its "diary applet 112 sends changes (if any) for the user's diary to the diary server (*periodically or at user's instruction*)" and its "applet 112 will *eventually* regenerate the diary page to look like the diary page of FIG. 4(m)." Appx455, 9:14-16; Appx457, 13:24-25 (emphases added).

This evidence belies the Director's unsupported assertion that VDM '316 "includes multiple exemplary figures with only a quick-to-process single diary image." Resp. Br. 34; Appx25-26. The Director identifies no teaching whatsoever that VDM '316's changes to its diary images are "quick to process." Furthermore, the evidence above contradicts it. The Director's arguments are not supported. *See Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1359 (Fed. Cir. 2018)

("'[a]ttorney argument is not evidence' and cannot rebut other admitted evidence")
(citation omitted).

### b. The Board erred in finding that Express Mobile's assertions about the accept button contradict VDM '316

The Board's and Director's attempts to find support for the Board's analysis are unsupported and contradict the record.

The Director argues that Figures 4(b) and 4(l) of VDM '316 show that "generation of the HTML for the display is triggered by the user's selection, *and only after the generation of those changes to the diary is the option to accept or cancel changes available*," and that "[*t*]*here is no mention of the accept button playing any role in, or being necessary to, the editing sequence*." Resp. Br. 34-35 (emphasis added). The disclosures of VDM '316 flatly contradict the Director's assertions:

> Once the diary owner *clicks on accept button 406* of FIG. 4(i), applet 112 is caused to exit edit mode (via another executable program) and regenerates the diary page *without handle 499* to yield a page such as the page of FIG. 4(n), where content object 401 is again displayed in its new position, *but without a handle*.

Appx457, 13:30-35 (emphasis added). The ultimate output of these changes, shown by FIG. 4(n), *does not include the edit handle*. Appx440. And obtaining that output of 'VDM '316 *requires "click[ing] on accept button 406"*. Appx457, 13:30-31.

Compare this to claim 1 of the '397 Patent. Claim 1 is expressly directed to "[a] method to allow users to produce Internet websites on and for computers having

13

a browser *and a virtual machine* capable of generating displays." Appx177, Claim 1 (emphasis added). Element (a) recites "a viewable menu" with a "panel of settings being presented through a *browser*". *Id.* (emphasis added). Element (b) is directed to "generating a *display* in accordance with one or more user selected settings *substantially contemporaneously with the selection thereof*". *Id.* (emphasis added). In contrast, in the sequence of steps quoted by the Director under "Modifying Content Entries" in VDM '316, Figure 4(l) provides a "flow chart showing steps involved in editing an existing content object," and describes how "[f]inally, a new (updated) page is generated and displayed." Appx439; 456, 12:11, 44-45. Clicking on a "handle" in the applet is required, as described above, and these changes are required to be accepted in some fashion, *e.g.*, by clicking the "accept" button as set forth above, *before the changes are ultimately displayed without an "edit" handle*. Appx440, Figure 4(n).

The Board's announced and agreed-upon construction of "substantially contemporaneous[]" display on the internet, *i.e.,* "happening at the same period of time from a human perspective," could not meaningfully be met by displaying an "edit" handle, which by definition is not "WYSIWYG representation of the web page." Resp. Br. 40; Appx76, Abstract. Instead, these handles and the "accept button" are found only in VDM '316's "Java applet window" of Figures 4(a)–(i) and (k), not on the ultimate web page displayed in VDM '316's browser. Appx433-438.

The "edit" handle is only eliminated when the "accept" button 406 is pressed, and "finally" VDM '316 "regenerates the diary page without handle 499 to yield a page such as the page of FIG. 4(*n*)." Appx457, 13:30-34.

The Director argues that "VDM '316 teaches and emphasizes that the content object has *already* been displayed in its new position while in edit mode and *before* the accept button was pressed to exit edit mode." Resp. Br. 37 (emphases added). Nothing in the record supports this contention. The portion of VDM '316 the Director cites, "Modifying Content Entries," is not consistent with this new argument—*or* with display occurring "substantially contemporaneously":

> If the diary owner indicates via several presses of button 494 of FIG. 4(i) that the content object is to move to the bottom position, applet 112 will *eventually regenerate* the diary page to look like the diary page in FIG. 4(m).

Resp. Br. 18-19 (citing Appx457, 13:22-25) (emphasis added). VDM '316's Figure 4(l), described in this "Modifying Content Entries" section, also belies the Director's argument: "[f]inally, a new updated page is generated and displayed." Appx439.

The Director argues that "it is only updates to [VDM '316's] *diary server* information that are 'periodic' or 'at the user's instruction'—citing portions of VDM '316's column 9 in the section entitled "Overview of Viewing and/or Editing a Diary," which describes the flowchart in Figure 3. Resp. Br. 37 (citing Appx454-455). Again, VDM '316 fails to support the Director's new position. The third sentence of that section, not quoted by the Director, provides that "[i]n step 302, *the*

*user starts his browser 110 and views an initial diary Web page (not shown) received*

*by the browser . . . .*" Appx454, 8:35-38 (emphasis added). VDM '316 Figure 3

clearly shows that changes to the applet (as opposed to the browser) *are* sent to the

server "periodically or at user's instruction":



Appx432.    *Nothing* in this section even suggests that any changes are displayed

substantially contemporaneously in the browser.

The Director argues that "Express Mobile's argument that *VDM '316 does not*

*display real time updates to the display* in response to a user's selection of settings"

"*has nothing to do with updates to the user's local display in edit mode*". Resp. Br.

37-38 (emphasis added). However, that is incorrect. That would conflate (1) VDM

'316's display in its applet, where changes are made, with (2) VDM '316's update

16

process to generate a display of the webpage in its *browser*. But claim 1 of the '397 patent makes clear that the user selectable settings must be "presented through a browser":

> 1. A *method to allow users to produce Internet websites on and for computers* ***having a browser and a virtual machine capable of generating displays***, said method comprising:
> (a) *presenting a viewable menu having a user selectable panel of settings* describing elements on a website, said panel of settings ***being presented through a browser*** on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands to said virtual machine;
> (b) ***generating a display in accordance with one or more user selected settings substantially contemporaneously*** with the selection thereof;
> . . . .

Appx177, Claim 1 (emphasis added). The display occurring "substantially contemporaneously" is generated by the "browser and a virtual machine capable of generating displays." *Id.* Consistent with the goal of presenting "a WYSIWYG representation of the web page," Appx76, Abstract, the claimed "display" must be generated "substantially contemporaneously" by "a browser" and a "virtual machine capable of generating displays," not an applet. Appx177, Claim 1. As the '397 patent explains, "[t]he entire web site build process is WYSIWYG (what you see is what you get), *with the web designer working directly on and with the final web page.*" Appx145, 2:33-37 (emphasis added).

The Director's attempt on appeal to conflate display on the applet during the editing process, requiring further clicks on handles or "accept" buttons, with display

17

on the browser "substantially contemporaneously" with user selection of settings, contradicts the record.

**2.    The Board erred in finding that VDM '316 updates the display to reflect a user selection "at the same time" the user selects a setting**

The Director argues without support that VDM '316's phrase "at the same time" means that "[t]hese interactions between the diary applet and the browser, and their sequence, demonstrate that a user's selection of settings and the display of the updated diary page reflecting those selections are in fact happening 'at the same time.'" Resp. Br. 39.

As described above, the '397 patent is directed to the ultimate "WYSIWYG representation of the web page," not merely the editing process in the applet. Appx76, Abstract.

The "at the same time" statement in VDM '316 is about its FIG. 4(l) disclosure in the section entitled "Modifying Content Entries." It must be read in view of that material. As VDM '316 explains:

> If the diary owner indicates via several presses of button 494 of FIG. 4(i) that the content object is to move to the bottom position, *applet 112 will eventually regenerate* the diary page to look like the diary page in FIG. 4(m).

Appx457, 13:22-25 (emphasis added). Nothing about "several presses" of the button and the phrase "eventually regenerate" indicates display occurs "substantially contemporaneously," or even in a browser. The opposite is true. Fig. 4(l), entitled

18

"HTML Control (Editing Content)," provides no support for the Director either, since it provides that "[f]inally, a new (updated) page is generated and displayed." Appx439. Tellingly, and unpersuasively, while the Director includes a detailed description of Figure 4(l), it leaves out this key portion of the Figure. Resp. Br. 39.

No evidence supports the assertion that VDM '316 updates the display to reflect a user selection "at the same time" temporally as the user selects a setting. There are two major flaws in this assertion.

***First***, even assuming *arguendo* that VDM '316 discloses "substantially contemporaneous" generation, its only disclosure of that generation does not even suggest it takes place in the browser. Claim 1 expressly requires "a browser and a virtual machine capable of generating displays" and the "generating a display" and user selections must be displayed in the browser. Appx177, Claim 1. In contrast, in VDM '316 the editing process uses windows opened in separate "applets" with their own HTML: "If the owner has entered edit mode and then presses button 495 of FIG. 4(i), applet 112 generates HTML for the window of FIG. 4(k), . . . " Appx457, 13:38-40. Figure 4(k) inarguably does not show a browser—it expressly shows a "Java Applet Window." Appx438. VDM '316 explains that the windows in its editing process "are generated by applet 112 and are not displayed via the browser." Appx457, 13:19-21. Thus, even accepting the argument that this generation of user selections is substantially contemporaneous, it *still fails* to meet the claims.

**Second**, the Board's finding that VDM '316 teaches that the applet could be implemented in the browser to meet the claims is unsupported. Resp. Br. at 43. The Board points to only two, non-contiguous sentences in VDM '316 as allegedly supporting this finding: "For example, diary applet 112 could, instead be implemented as a plug-in to browser 110," and "[t]he functionality of the diary applet 112 could also be implemented in the browser." Resp Br. 9 (citing Appx459, 18:48-49, 18:52-53). These two sentences come at the beginning and end of VDM '316's disclosure regarding implementing the diary applet as a part of the browser, either as a plug-in or integral to the browser itself. First, such statements do not even resemble an enabling disclosure. VDM '316 offers no instruction or even suggestion at how one of ordinary skill in the art might go about doing this at all. More importantly, this offhand suggestion of such a hypothetical system, without a single detail as to its operation, design, or even appearance that discloses nothing about the hypothetical "browser," offers no reason to assume implicitly that any generation of a display taking place in such a hypothetical system would be done "substantially contemporaneously" with user selection of edits. *See Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993 F.3d 1374, 1381 (Fed. Cir. 2021) ("In the absence of such other supporting evidence to enable a skilled artisan to make the claimed invention, a standalone § 103 reference must enable the portions of its disclosure being relied

upon."). There is no evidence of this, other than the circular premise that VDM '316's browser-applet system *already* does this "substantially contemporaneously."

### 3. The Board erred in finding that VDM '316 does not use the word "eventually" to indicate an indeterminate delay before updating the display

The Director argues that "Express Mobile offers only attorney argument, unsupported by analysis of the prior art or persuasive evidence, that because VDM '316 'regenerates' the HTML for a diary page, there must be delay apparent to a human user." Resp. Br. 40. This is not so. The specification of the '397 patent and VDM '316 and the testimony of Express Mobile's expert Mr. Weadock all clearly support this conclusion, and no evidence supports the Board's contrary conclusion.

The '397 patent explains emphatically that "it is virtually impossible to write a web publishing application in HTML and JavaScript." Appx145, 1:22-23. It further explains that "HTML and JavaScript are incapable of reformatting text and scaling buttons or images dynamically." *Id.* at, 1:40-41). Accordingly, the patent is directed to providing "a real time, dynamic linkage between JAVA and HTML including two-way communications, in real time, between JAVA and JavaScript." Appx146, 3:4-6.

VDM '316 is entirely consistent with this description of delay apparent to a human user in the prior art—and is not directed to, and does not discuss, solving problems with internet delay apparent to a human user. In the background of the

invention VDM '316 explains that the Internet "has quite a few drawbacks." Appx451, 1:27-28. VDM '316 explains that "[s]ome drawbacks, such as its speed (or lack thereof) are readily apparent to the casual user." *Id.* at 1:28-29. VDM '316 is directed to creating a "diary" containing multimedia references to contents of Websites and explains that "a user's travels on the Web are rather volatile, since he has nothing tangible by which to remember where he has gone." *Id.* at 1:63-65. VDM '316 explains the problem it attempts to solve: "[w]hat is needed is a way for users to keep track of locations that they have visited in a more visual and memorable way." *Id.* at 1:65-67. VDM '316 does not even *suggest* that it can provide, or considers desirable (or even possible), a real time, dynamic WYSIWYG-type "substantially contemporaneous" display.

Mr. Weadock's declaration explained without refutation why VDM '316 is incapable of providing "substantially contemporaneous" display. Appx1734-1737 (¶¶ 106–113). He explains that "the implementation of VDM '316, which requires the applet to render everything in HTML before display on the browser, does not describe displaying such changes immediately and only describes doing so 'eventually,' after multiple button presses, as stated at VDM '316, 13:24-25." Appx1737 (¶ 111) (citing Appx457). He explains that "[a] person of ordinary skill therefore would have understood that no display is generated in accordance with the positions selected via buttons 491-494 of FIG. 4(i) *substantially contemporaneously*

*with or contemporaneously with the selection thereof*." Appx1737 (¶ 112) (emphasis in original). In sum, all this evidence shows that there is delay evident to the human user in the prior art, including VDM '316.

The Director says Express Mobile's explanation concerning the "at the same time" language in VDM '316 not being temporal is inconsistent with Express Mobile's explanation of how the processing in VDM '316 is "slow enough to be noticeable to a user." Resp. Br. 41. The Director cites a definition of "regenerate." *Id.* But the Director fails to provide any citations or explanation supporting this definition or its argument that such "regeneration" would provide display "substantially contemporaneously." *Id.*

Instead, the Director argues that Express Mobile "ignores the context" in which the words "eventually regenerate" appear, citing to VDM '316 at Appx456, 12:19-23 and Appx457, 13:11-30. Resp. Br. 41-42. But the Director's choice of citations under the "Modifying Content Entries" section of VDM '316 is telling. The part of the paragraph the Director fails to include in its citation provides as follows:

> *Once the diary owner clicks on accept button* 406 of FIG. 4(i), *applet 112 is caused to exit edit mode (via another executable program) and regenerates the diary page without handle 499 to yield a page* such as the page of FIG. 4(n), where *content object 401 is again displayed in its new position, but without a handle*. The next time this page is saved to the diary server 104, this positional change is saved in the user's diary information.

Appx457, 13:30-37 (emphasis added). As discussed above, clicking on the accept button and regenerating displays with and without "handles" is not consistent with

"substantially contemporaneous" display, which makes sense because "substantially contemporaneous" display is not what VDM '316's "diary" was intended for.

Even the passage cited by the Director does not support the Director's argument. It provides that "[i]f the diary owner indicates via *several* presses of *button* 494 of FIG. 4(i) that the content object is to move to the bottom position, applet 112 will *eventually* regenerate the diary page to look like the diary page in FIG. 4(m)." Appx457, 13:22-25 (emphasis added). Nothing in this passage indicates that display of the diary page occurs "substantially contemporaneously." In fact, the opposite is true. The Director asserts that VDM '316, (Appx457, 13:11-30) is "intended to convey a logical sequence for processing, not a representation of how a user will perceive the process in real time" and that "the choice of the word 'eventually' reflects that the user is moving the content object one position down for each button press, with the display updated in response each time." Resp. Br. 42. However, the Director cites nothing supporting this interpretation. Instead, the Director simply quotes the language of VDM '316 stating that the display will "eventually regenerate the diary page to look like the diary page in FIG. 4(m)." Resp. Br. 42 (quoting Appx457, 13:24-25). The Director's attempt to recharacterize this clear language without any support for its interpretation is unconvincing.

The Director argues "it is simply reading too much into the word 'eventually' in context to suggest that it carries VDM '316's teachings outside the bounds of

'substantially contemporaneously.'" Resp. Br. 42. But the problem here is more fundamental. The burden is on the Director to show that the claim is taught or suggested. And the Director cannot identify any teachings in VDM '316 of "substantially contemporaneous" display. The absence of evidence, combined with a refusal to give words like "eventually" their plain meaning, underscores that the actual interpretation of "substantially contemporaneously" applied by the Board is merely occurring at some point afterwards, including after additional user interaction such as clicking an accept button.

The Director attempts to distract from this lack of support by criticizing Express Mobile's expert testimony. However, the Board's conclusion that Mr. Weadock's testimony is unsupported by "any substantive analysis of the actual amount of time it would take to regenerate an HTML file and send that file to a browser" is itself unsupported. Resp. Br. 43 (citations omitted). Mr. Weadock explained:

> In contrast, the implementation of VDM '316, which requires the applet to render everything in HTML before display on the browser, does not describe displaying such changes immediately and only describes doing so 'eventually,' after multiple button presses, as stated at VDM '316, 13:24-25.

Appx1737 (¶ 111). Furthermore,

> A person of ordinary skill therefore would have understood that no display is generated in accordance with the positions selected via buttons 491-494 of FIG. 4(i) *substantially contemporaneously with or contemporaneously with the selection thereof.*

Appx1737 (¶ 112) (emphasis in original). Mr. Weadock's testimony is supported by the evidence in both the '397 patent and VDM '316 and is contradicted by nothing in the record.

The Director states, citing to VDM '316 (Appx459, 18:48-53), that "the Board determined that Mr. Weadock appeared to base his opinion on the existence of a separate diary applet and browser-based interface in VDM '316, but failed to address the impact of VDM '316's teaching that the applet could be implemented as a browser plug in or implemented in the browser itself." Resp. Br. 43 (citations omitted). However, the Board's finding fails to address that VDM '316 provides no guidance, including written description or enabling disclosure, describing this "implement[ation]," let alone describing it as displaying "substantially contemporaneously" with user edit selections. VDM '316 says that:

> For example, diary applet 112 could, instead be implemented as a plug-in to browser 110. This has the advantage of being free of the Java "sandbox," but requires a different plug-in for each type of browser and needs to be installed by the user before it can be used. *The functionality of the diary applet 112 could also be implemented in the browser.*

Appx459, 18:48-53 (emphasis added). *See Raytheon*, 993 F.3d at 1381. Here, there is no other supporting evidence and no enablement.

Putting aside the fact that a diary-browser combination still would not provide the separate claimed display "substantially contemporaneously," the lack of written

enablement for this hypothetical embodiment, as well as its speculative nature, is shown a few sentences later:

> Similarly, all of the HTML generation could be performed by the diary server 104. This *might* lower the bandwidth required and would simplify the transfer mechanism. *However, when envisioned in an application of the invention where millions of users use a diary, this places an unacceptable burden on the diary server(s) 104.*

Appx459, 18:57-62 (emphasis added). This does not teach; it only teaches away.

The Director's other criticisms of Mr. Weadock's testimony have even less merit. His testimony with respect to Figures 42, 44, and 45 of the '397 patent is said to "not explain how these static figures indicate the timing in which updating occurs." Resp. Br. 44. However, Mr. Weadock explains that "[u]nlike the applet and browser in VDM, the patent's embodiments utilize a WYSIWYG environment with its own interface that is capable of displaying a user's changes immediately from a user's point of view." Appx1736 (¶ 110). Mr. Weadock cites to the '397 patent, Appx155-156, 22:66-23:37, which is a specific citation to the '397 patent's polling process and Figure 9.[1] This specific citation provides further support for Mr. Weadock's opinions, explaining in part that "[t]he polling technology is essential for creating the necessary two-way real time communication between the

---

[1] The Board also criticizes Mr. Weadock's "wide-ranging citation," to "15 columns of the '397 patent," misinterpreting a citation that reads 22:66-37. Resp. Br. 44, n.8. This was intended as shorthand for "22:66-23:37," and clearly did not refer to 15 columns of text.

JavaScript/HTML interface and the JAVA build engine." Appx155-156, 22:66-23:2.

The passage cited by Mr. Weadock explains the basis for his belief about "the timing

in which updating occurs":

> A polling loop is defined in the panel's (panel 400) JavaScript that
> creates a near continuous, at least from a human perception point of
> view, dynamic real time link, in order to monitor events occurring
> inside the build engine. The result is a real time retrieval (from an
> ergonomic perception point of view) of necessary data and status
> settings from the build engine back to the interface.

Appx156, 23:21-27. Regarding Mr. Weadock's basis for his opinion about display

occurring "substantially contemporaneously," the '397 provides that "[i]n one

implementation, the polling loop is set at a poll rate of once every 100 milliseconds

or less." Appx156, 23:30-32. Accordingly, the Director's assertion that "Mr.

Weadock does not explain how these static figures [of the '397 patent] indicate the

timing in which updating occurs" is baseless. Resp. Br. 44.

The Director asserts that the '397 patent teaches a separate browser-based

build engine and a browser-based interface that allegedly contradicts Mr. Weadock's

opinion that "the '397 patent's architecture is unified in a way that the architecture

in VDM '316 is not." Resp. Br. 44. However, the Director's citation to the summary

of the invention leaves out its statement that:

- A browser based build engine is provided that includes a browser based
  interface. *The entire web site build process is WYSIWYG (what you see is what
  you get), with the web designer working directly on and with the final web
  page*.

28

- The *present invention provides a real time, dynamic linkage between JAVA and HTML including two-way communications, in real time*, between JAVA and JavaScript.

Appx145, 2:33-37; Appx146, 3:4-6 (emphases added). The Director cites to Figure 3(a) (Appx79) but leaves out Figure 3(b) (Appx80), entitled "The Build Tool & Build Process." The portion of Figure 3(b) labeled 16 refers to "polling technology: interface to the build engine," which in turn refers to Figure 9 (Appx89), entitled "Polling Methods." Figure 9 explains that "JAVASCRIPT POLLS THE JAVA BUILD ENGINE EVERY 100 (OR LESS) MILLISECONDS." *Id*. This explanation of the polling architecture and the real-time, dynamic linkage provided in the '397 patent not only supports, but confirms beyond reasonable doubt, Mr. Weadock's opinion that the '397 patent's architecture is unified in a way that the architecture in VDM '316 is not.

Finally, the Director argues that "Mr. Weadock is also wrong that the '397 interface alone changes the display in response to user selections." Resp. Br. 44. The Director provides no citations to this alleged error in Mr. Weadock's declaration. And the two citations to the '397 patent that it provides are both consistent with display "substantially contemporaneously":

- "[t]o enable effective two-way communication between the interface and the build engine, polling technology is included as shown at 16 [see Fig. 9]."
- "[i]nteractive fields 460 [in Fig. 37] also show the current value of a setting, but can also be directly changed by the user by typing into the field, *with the result immediately processed by the build engine 352 and displayed in the build frame 500*."

Resp. Br. 44, 45 (citing Appx147, 6:38-41; Appx149, 10:37-41) (emphasis added).

In short, the Board's determinations concerning the word "eventually" in VDM '316 are unsupportable under the correct claim construction of "substantially contemporaneously."

> ### 4. The Board erred in finding that the '397 patent's polling architecture is not faster or better than VDM '316's processing methodology

The Board argues that Express Mobile's argument that VDM '316 does not disclose the patent's "substantially contemporaneous[]" display supposedly "is not internally coherent" because it "argues that VDM '316 must be slow because of the separate Java diary applet and JavaScript browser, but, contradictorily, points to the polling technique necessitated by the '397 patent's separation of the Java build engine and the JavaScript interface as a reason for its 'real time' processing." Resp. Br. 46-47. The Director misapprehends and sees a contradiction where none exists. VDM '316 has a separate browser and applet, and no polling technology, whereas the '397 patent has a polling technique and "a real time, dynamic linkage between JAVA and HTML including two-way communications, in real time, between JAVA and JavaScript." Appx146, 3:4-6.

The Director argues that "Express Mobile offers nothing more than the assertion that because Figure 4(l) of VDM '316 is allegedly different from polling, VDM '316 cannot teach the disputed claim limitation," and concludes that "[a]s the

30

claims do not require polling, this argument fails." Resp. Br. 46. However, it is undisputed that the '397 patent describes and claims displaying "substantially contemporaneously," and how to achieve it through polling architecture, which can, for example, "be set at a poll rate of once every 100 milliseconds or less." Appx156, 23:30-32. In contrast, VDM '316, in Figure 4(l), merely provides that "[f]inally, a new (updated) page is generated and displayed." Appx439.

### 5. The Board erred in finding that VDM '316 teaches generating display "substantially contemporaneously" with user selection of privacy settings

The opening brief explained why the Board's analysis of the privacy settings is erroneous. Op. Br. 54. In response, the Director asserts that "display can still be in accordance with a user selection even when the selection does not result in a visible change to the display." Resp. Br. 49. The Director's arguments lack merit.

The question is whether the privacy settings of VDM '316 can satisfy the "substantially contemporaneously" limitation of claim 1. Claim 1 requires "generating a display in accordance with one or more user selected settings *substantially contemporaneously* with the selection thereof." Appx177. If one changes the settings on a profile to make it visible (or invisible) to others, and a third party chooses to view that profile at a later point, that does not mean that the profile was viewed "substantially contemporaneously." No evidence exists that such a viewing would occur "substantially contemporaneously."

The Director's argument that "display can still be in accordance with a user selection even when the selection does not result in a visible change to the display," as somehow satisfying claim 1's display "substantially contemporaneously" requirement, is nonsensical. Resp. Br. 49. *See Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 162 (Fed. Cir. 2021) ("We decline [party's] invitation to read the [limitation] in isolation, divorced from the claim as a whole.").

## CONCLUSION

In summary, the Board effectively interpreted "substantially contemporaneously" to mean occurring at some point afterwards, including after an additional user interaction (*e.g.,* clicking an accept button). This was error.

The decision below should be reversed. At a minimum, this Court should vacate the Board's decision and remand with instructions to apply the proper construction of "substantially contemporaneously."

Dated: June 22, 2023                    Respectfully submitted,

                                        */s/ Robert F. Kramer*
                                        Robert F. Kramer
                                        David Alberti
                                        Sal Lim
                                        James P. Barabas
                                        **KRAMER ALBERTI LIM
                                        & TONKOVICH LLP**
                                        577 Airport Blvd., Suite 250
                                        Burlingame, CA 94010
                                        Telephone: (650) 825-4300

Kenneth J. Weatherwax
**LOWENSTEIN&**
**WEATHERWAX**
1016 Pico Blvd.
Santa Monica, CA 90405
Telephone: (310) 307-4500

*Counsel for Appellant Express Mobile, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A). The brief contains 6,879 words excluding the portions exempted by Federal Circuit Rule 27(d).

2.    This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2019 in 14-point Times New Roman.

*/s/ Robert F. Kramer*
Robert F. Kramer
**KRAMER ALBERTI LIM & TONKOVICH LLP**
577 Airport Blvd., Suite 250
Burlingame, CA 94010
Telephone: (650) 825-4300

*Counsel for Appellant Express Mobile, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2023, I caused **Appellant's Reply Brief** to be electronically filed with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ Robert F. Kramer
Robert F. Kramer
**KRAMER ALBERTI LIM & TONKOVICH LLP**
577 Airport Blvd., Suite 250
Burlingame, CA 94010
Telephone: (650) 825-4300

*Counsel for Appellant Express Mobile, Inc.*