NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: EXPRESS MOBILE, INC.,**
*Appellant*

---

2023-1076

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 90/014,615.

---

Decided: May 29, 2024

---

DAVID ALBERTI, Kramer Alberti Lim & Tonkovich LLP, Burlingame, CA, argued for appellant. Also represented by JAMES BARABAS, ROBERT KRAMER, SAL LIM; KENNETH J. WEATHERWAX, Lowenstein & Weatherwax LLP, Santa Monica, CA.

PETER JOHN SAWERT, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Katherine K. Vidal. Also represented by AMY J. NELSON, FARHEENA YASMEEN RASHEED, KEVIN RICHARDS.

---

Before LOURIE, PROST, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

Express Mobile, Inc. ("Express Mobile"), owner of now-expired U.S. Patent No. 6,546,397 ("'397 patent"), appeals an *ex parte* reexamination decision by the Patent Trial and Appeal Board ("Board"), sustaining an examiner's rejection of claim 1 for obviousness. Express Mobile concedes the Board's stated construction of "substantially contemporaneous" is correct but asserts on appeal that the Board erred in its application of this construction. We conclude that Express Mobile's issue actually constitutes a disagreement with certain factual findings, all of which are supported by substantial evidence. Accordingly, we affirm.

# I

## A

The '397 patent, entitled "Browser Based Web Site Generation Tool and Run Time Engine," relates to "designing and building a web page" using "a browser based build engine." '397 Patent Abstract. The patent has a filing date of December 2, 1999 and expired before the *ex parte* reexamination at issue in this appeal.

Claim 1, the only claim involved in this appeal, recites:

> A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said method comprising:
>
> > (a) presenting a viewable menu having a user selectable panel of settings describing elements on a website, said panel of settings being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands to said virtual machine;

> (b) generating a display in accordance with one or more user selected settings *substantially contemporaneously* with the selection thereof,
>
> (c) storing information representative of said one or more user selected settings in a database;
>
> (d) generating a website at least in part by retrieving said information representative of said one or more user selected settings stored in said database; and
>
> (e) building one or more web pages to generate said website from at least a portion of said database and at least one run time file, where said at least one run time file utilizes information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more web pages.

’397 patent cl. 1 (emphasis added). The patent discloses that, in one embodiment, “[a] browser based build engine is provided that includes a browser based interface.” *Id.* at 2:33-34. This browser-based interface provides a “WYSIWYG (what you see is what you get)” process for building a web page, by which “the web designer [can] work[] directly on and with the final web page.” *Id.* at 2:34-37.

Figure 37, reproduced below, shows an example of a browser-based "user interface presented by the build tool," including "panel 400," through which a user can change various attributes of the displayed interface objects (e.g., textbox, image). *Id.* at Fig. 37, 10:19-21.

Fig. 37




In this exemplary embodiment, a user can select an interface object (e.g., textbox or image) shown within the build frame 500 and change an attribute (e.g., size) using the associated panel object (e.g., by selecting an item in a drop-down list) within panel 400. *See id.* at 10:27-53. Any change made to the interface object "become[s] the current setting with the result immediately processed by the build engine 352 and displayed in the build frame." *Id.* at 10:45-46. The patent explains that conventional tools were not browser-based, and thus they could "offer only a crude preview capability of what a real web page will look like." *Id.* at 1:25-31.

B

VDM '316[1] is prior art to the '397 patent and discloses techniques for "allow[ing] a user to create a 'diary.'" VDM '316 at 2:2-11. In VDM '316, a "diary owner can edit existing diary content and layout by entering an edit mode." *Id.* at 2:57-60.




Figure 4(a)

Figure 4(a), reproduced above, illustrates "exemplary diary page 400 [that] is being viewed with browser 110," where "diary applet 112 has popped up a diary navigator bar window 402." *Id.* at 9:28-30. "The diary owner can change properties of a content object on a diary page." *Id.* at 12:24-25. One method of VDM '316 "enables embodiments such as a diary to display and manipulate contents within an HTML document and, at the same time, uses the browser as a vehicle to handle the actual display and diary owner input." *Id.* at 13:3-7.

C

On November 25, 2020, a third party petitioned the U.S. Patent and Trademark Office ("Patent Office") for *ex parte* reexamination of claims 1-6, 8-15, 17, 19, 20, 23-25, 35, and 37 of the '397 patent. The Patent Office granted the petition and ultimately issued a final office action

---

[1] U.S. Patent No. 6,415,316.

confirming the patentability of claims 2-6, 8-15, 17, 19-20, 23-25, 35, and 37 but rejecting claim 1 as obvious based on a combination of VDM '316 and VDM '362.[2] There are no disputes before us relating to VDM '362.

Pertinent to this appeal, the examiner stated that VDM '316 "allows the contents [of the diary] to be edited and *at the same time* uses the browser as a vehicle to handle the actual display and diary owner input of the setting." J.A. 61 (emphasis in original). Thus, the examiner concluded, VDM '316 discloses limitation (b) of claim 1: "generating a display in accordance with one or more user selected settings substantially contemporaneously with the selection thereof." *Id.*

Express Mobile appealed the examiner's rejection of claim 1 to the Board. The Board sustained the rejection. Noting that the '397 patent was involved in multiple lawsuits, the Board adopted the construction that had been adopted in the Eastern District of Texas: "happening at the same period of time from a human perspective." *See* J.A. 9 (quoting J.A. 1812). Based on this construction, the Board agreed with the examiner that VDM '316 disclosed limitation (b) of claim 1. In doing so, the Board expressly rejected Express Mobile's contentions that (i) the display is only updated after activating an accept button, (ii) the display is only updated "eventually," and (iii) sometimes no display is updated even when it should be. *See* J.A. 20-28. The Board added that its decision would remain the same even if it construed the disputed term to mean "occurring immediately after," the construction it was given in separate litigation in the Northern District of California. *See* J.A. 9 (quoting J.A. 1826).

---

[2] U.S. Patent No. 6,289,362.

Express Mobile timely appealed the decision of the Board. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

II

"We review the Board's ultimate claim construction in a reexamination de novo." *In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1340 (Fed. Cir. 2016) (citing *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 329-33 (2015)). When "a reexamination involves claims of an expired patent, . . . the [Patent Office] applies the claim construction principles outlined by this court in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)." *In re Rambus, Inc.*, 753 F.3d 1253, 1256 (Fed. Cir. 2014). The Board's subsidiary factual findings underlying obviousness are reviewed for substantial evidence, and any subsidiary factual findings underlying claim construction are reviewed for clear error. *See In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012); *see also Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1022 (Fed. Cir. 2020). What the prior art teaches is a question of fact. *See In re Berg*, 320 F.3d 1310, 1312 (Fed. Cir. 2003).

III

The issue on appeal involves the claim term "substantially contemporaneously," which appears in element (b) of claim 1 of the '397 patent. Without objection from Express Mobile, the Board adopted a construction Express Mobile had proposed and a district court had adopted: "happening at the same period of time from a human perspective." J.A. 8-9 ("Appellant asks that we adopt the prior district court's constructions for two terms: 'setting' and 'substantially contemporaneously.' . . . [W]e adopt the [prior] court's construction.").

Express Mobile argues that the Board did not really apply this correct construction when it evaluated the prior

art. Specifically, in Express Mobile's view, VDM '316 discloses that a user's selection will not be reflected in a display *until after* an additional input from the user, such as clicking an "accept" button. This results in some perceptible delay, to a human being, between making a change to a setting and the display then showing that change. By nonetheless finding that VDM '316 disclosed the "substantially contemporaneously" limitation, the Board, according to Express Mobile, effectively construed the claim term to mean "occurring an unclear time afterwards, including after an additional user interaction (e.g., clicking an accept button)." Opening Br. at 27.

We agree with the Board's construction and disagree with Express Mobile that the Board failed to apply it.

A

We reach the same claim construction conclusion as the Board, the Eastern District of Texas, and Express Mobile. That is, the correct construction of "substantially contemporaneously" as used in the '397 patent is "happening at the same period of time from a human perspective."

The '397 patent repeatedly explains that any change made by the user is "immediately" displayed. *See* '397 patent at 10:37-41 ("Interactive fields 460 . . . can also be directly changed by the user by typing into the field, with the result immediately . . . displayed in the build frame 500."); *id.* at 10:44-47 ("The user can click on an item in the selection list, which will become the current setting with the result immediately . . . displayed in the build frame."); *id* at 10:49-52 ("One or more settings can be changed through a pop-up window, with the results immediately . . . displayed in the build frame 500."). The patent further teaches that immediateness is measured from a human's perspective, not a computer's. *See id.* at 23:21-24 ("A polling loop is defined in the panel's (panel 400) JavaScript that creates a near continuous, *at least from a human perception point of*

*view*, dynamic real time link, in order to monitor events occurring inside the build engine.") (emphasis added).

Thus, based on the intrinsic evidence, the correct construction of "substantially contemporaneously" in the '397 patent is "happening at the same period of time from a human perspective." *See generally Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("[W]e still 'give[] primacy' to intrinsic evidence . . . .").

B

Contrary to Express Mobile's insistence, the Board appropriately applied the correct construction of "substantially contemporaneously." Express Mobile's contention is based on its own interpretation of VDM '316 as requiring additional user input before, after a perceptible delay, a user's selection is reflected in the user's display. This was not, however, the Board's reading of the prior art reference – and "[w]hat the prior art discloses . . . [is a] fact question[] that we review for substantial evidence." *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1378 (Fed. Cir. 2023). The Board's understanding of the disclosures of VDM '316 is supported by substantial evidence.

Specifically, the Board relied on Figure 4(l) and the disclosure in VDM '316 that "'[t]he method of FIG. 4(l) enables embodiments such as a diary to display and manipulate contents within an HTML document and, *at the same time*, uses the browser as a vehicle to handle the actual display and diary owner input.'" J.A. 22 (quoting VDM '316 at 13:3-7).

Express Mobile counters by both challenging the Board's reading of these portions of VDM '316 and by pointing to different portions of it. Even assuming, without deciding, that the record contains substantial evidence that could, in theory, have supported Express Mobile's interpretation of the reference, the only issue before us is whether

substantial evidence supports the Board's reading. *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). It does, for the reasons explained above and below. Nonetheless, we briefly address Express Mobile's counterarguments.

Express Mobile contends that VDM '316 does not use "at the same time" in the literal sense. Instead, Express Mobile would have us read "at the same time" as having no temporal significance and merely meaning "as well as" or "in addition to." But there is nothing unreasonable, or unsupported, in the Board's conclusion that a person of ordinary skill would understand "at the same time" to mean, literally, two things happening "at the same time."

In support of its contention, Express Mobile points to a statement in VDM '316 that the diary page is "*eventually* regenerate[d]," VDM '316, 13:22-25 (emphasis added), insisting that "eventually" is opposite of "immediately." However, as the Board explained, this part of the reference may not be relating to the human perspective, and "[t]o be sure, from the *computer's* perspective, there will be some delay in VDM '316 after a button is selected while the applet regenerates the HTML and sends the regenerated HTML to the browser." J.A. 25. The Board was free to reach this conclusion notwithstanding the contrary expert testimony offered by Express Mobile, which the Board deemed conclusory and void of "any substantive analysis of the actual amount of time it would take to regenerate an HTML file and send that file to a browser." J.A. 25.[3] As

---

[3] At oral argument, counsel for Express Mobile asserted that the Board failed even to consider the opinions

we have previously held, the Board is not required to accept even ostensibly unrebutted expert testimony. *See TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1359 (Fed. Cir. 2019) ("This court's opinions have repeatedly recognized that conclusory expert testimony is inadequate to support an obviousness determination on substantial evidence review."); *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1022 (Fed. Cir. 2017) ("Moreover, the Board was not required to credit [a party's] expert evidence simply because [the party] offered it."). The Board also made a factual finding, supported by substantial evidence, that clicking on an "accept" button is not the only way for the display in VDM '316 to be regenerated.

In a similar vein, Express Mobile argues that VDM '316 only updates the display "'periodically' or at a 'user's instruction'" and that "these time frames for updating are not 'substantially contemporaneously.'" Opening Br. at 33 (quoting VDM '316, 9:14-16). But this disclosure pertains to updates made *to the diary server*, not to the user's display. *See* VDM '316, 9:14-16 ("In step 310 diary applet 112 sends changes (if any) for the user's diary *to the diary server (periodically or at user's instruction).*") (emphasis added).

---

of its expert, Mr. Weadock. *See* Opening Br. at 34, 44. There is no basis for reaching such a conclusion. To the contrary, we have every reason to presume, as we generally do, that the Board considered the evidence before it, particularly given the numerous references to, and analysis of, Mr. Weadock's opinion throughout the Board's written decision. *See e.g., Yeda Rsch. v. Mylan Pharms. Inc.*, 906 F.3d 1031, 1046 (Fed. Cir. 2018) ("As we have said numerous times, failure to explicitly discuss every fleeting reference or minor argument does not alone establish that the Board did not consider it."); *see also* J.A. 20, 22-26, 28-29 (discussing Mr. Weadock's opinion).

Thus, this disclosure is irrelevant and does not undermine the Board's finding.

Moreover, Express Mobile makes much of the following sentence appearing in one of the figures in VDM '316: "Finally, a new (updated) page is generated and displayed." VDM '316 at Figure 4(l) *see also* Opening Br. at 52. However, in context, the Board was free to read "finally" as "merely refer[ring] to being the last of the bullet points" and "no way impl[ying] that the time required to generate and display the 'new (updated) page' is so long that it would not be substantially contemporaneous from a human user's perspective." J.A. 28.

The Board also rejected an Express Mobile argument to the effect that "nothing will happen to the display" in VDM '316 after a diary owner changes a privacy level unless a user enters a password and clicks "OK." *See* J.A. 29-30. The Board's rejection of this understanding of VDM '316 is supported by the fact that, as the Board noted, nothing in VDM '316 requires "(A) entry of the password after selecting the privacy level rather than before or (B) re-entering the password if it had already been entered for a previous change." J.A. 30 (internal emphasis omitted). As the Board observed, VDM '316 is silent as to "whether clicking OK button 457 is required to regenerate the display." J.A. 30. All of this constitutes substantial evidence support for the Board's understanding of the prior art reference.

Finally, Express Mobile faults the Board for failing to appreciate that VDM '316 discloses that if a diary owner makes a change to the privacy setting for a content object, she may observe no visible change to the diary page. This is irrelevant. The challenged claims of Express Mobile's patent do not require a display change on every occasion a user makes a selection. Instead, they only require that when a user selection requires a display change that the ensuing display change occur "substantially

contemporaneously" with the user selection. *See* J.A. 29 ("[N]either the user's perception nor a change in the resulting image is recited in the claim."). In both the '397 patent and VDM '316, when a user selection does not require a corresponding visual change, it is not necessary for the display to change nevertheless.

In the end, the Board had before it a factual dispute over what was disclosed by a prior art reference. In making the required findings of fact, the Board considered and expressly rejected Express Mobile's narrow reading of VDM '316. It addressed the specific arguments and evidence (including expert testimony) proffered by Express Mobile and found, reasonably, that Express Mobile "fail[ed] to provide sufficient evidence that [any] delay," such as the time a button is selected and the time after the applet regenerates the HTML and sends it to the browser, "will be significant or noticeable from the human user's perspective." J.A. 25 (internal emphasis omitted); *see also* J.A. 22 (Board holding Express Mobile's "assertions that the accept button must be selected in order to see any change in the display is therefore contradicted by the record"). We have been provided no meritorious basis to disturb these findings, each of which is supported by the substantial evidence.

## IV

We have considered Express Mobile's remaining arguments but find them unpersuasive. Thus, we affirm the Board's decision to sustain the examiner's rejection of claim 1 of the '397 patent as being obvious.

**AFFIRMED**